Gibney, Anthony & Flaherty, LLP
John Macaluso (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail: jmacaluso@gibney.com
Attorney for Plaintiffs

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NADIM KHOURI KLINK, an individual, and PC DESIGN SARL, a foreign business entity, <br><br> Plaintiff, <br><br> vs. <br><br> **M&H PERFUMES, INC.,** A New York corporation, d/b/a M & H PERFUMES d/b/a SHALIMAR PERFUMES, INC.; **N. TILANI FRAGRANCES, INC.,** a New York Corporation, d/b/a N. TILANI FRAGRANCE; **AKB PERFUME, INC.,** a New York corporation, d/b/a AKB PERFUME d/b/a TOP QUALITY PRODUCTS; **TOP QUALITY PRODUCTS, INC.,** a New York corporation, d/b/a TOP QUALITY PRODUCTS d/b/a AKB PERFUME; **METRO PERFUME, INC.,** a New York Corporation, d/b/a METRO PERFUME; **ORKAY ENTERPRISES, INC.,** a New York corporation, d/b/a ORKAY ENTERPRISES; **G.N. PERFUMES, INC.,** a New York corporation, d/b/a G.N. PERFUMES; **TK PERFUMES, INC.,** a New York corporation, d/b/a TK PERFUMES and DOES 1-10, <br><br> Defendants. | CASE NO. **08 CV 4243** <br><br> **Filed Under Seal** <br><br> **PLAINTIFF'S EMERGENCY *EX PARTE* APPLICATION FOR:** <br> **(A) TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER;** <br> **(B) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE;** <br> **(C) SUBSTITUTE CUSTODIAN ORDER; (D) EXPEDITED DISCOVERY; AND (E) AN ORDER TEMPORARILY SEALING THE COURT FILE, WITH MEMORANDUM OF LAW IN SUPPORT THEREOF** |

Plaintiffs, NADIM KHOURI KLINK ("Klink") and PC DESIGN SARL, a foreign business entity ("PC Design") (collectively "Plaintiffs") hereby move on an emergency basis for: (a) a temporary restraining order and seizure order; (b) order to show cause why a preliminary injunction should not issue; (c) a substitute custodian order; (d) expedited discovery; and (e) an order temporarily sealing the file.    In support thereof, Plaintiffs submit the following Memorandum of Law.

## MEMORANDUM

## I.    INTRODUCTION

Plaintiffs are suing M & H PERFUMES, INC., a New York corporation, d/b/a M & H PERFUMES d/b/a SHALIMAR PERFUMES, INC. ("M & H Perfume"); N. TILANI FRAGRANCES INC., a New York corporation d/b/a N. TILANI FRAGRANCES ("N. Tilani Fragrance"); AKB PERFUME, INC., a New York Corporation, d/b/a AKB PERFUME and TOP QUALITY PRODUCTS, INC., a New York corporation, d/b/a TOP QUALITY PRODUCTS d/b/a AKB PERFUME; (collectively the "AKB/Top Quality Defendants"); METRO PERFUME, INC., a New York corporation, d/b/a METRO PERFUME ("Metro Perfume"); ORKAY ENTERPRISES, INC., a New York Corporation, d/b/a ORKAY ENTERPRISES ("Orkay Enterprise"); G.N. PERFUMES, INC., a New York corporation d/b/a G.N. PERFUMES ("G.N. Perfume"); and TK PERFUMES, INC., a New York corporation, d/b/a TK PERFUMES ("TK Perfume") (collectively "Defendants") for federal trademark counterfeiting and infringement, false designation of origin and common law trademark infringement.    This suit arises out of Defendants' fraudulent manufacture, promotion, advertisement, distribution, and sale of counterfeit CUBA fragrance products (the "Defendants' Goods"), bearing spurious marks which are identical copies of Plaintiff Klink's federally registered trademark for the CUBA fragrance configuration and Plaintiffs' trade dress for the same (the "CUBA Mark and Trade Dress").

Specifically, the Defendants are using the Plaintiffs' CUBA Mark and Trade Dress in the same stylized fashion in connection with the marketing, advertisement, and sale of counterfeit fragrances. Moreover, the Defendants have slavishly copied the design, color scheme, and pattern of Plaintiffs' genuine product labeling and packaging. Thus, the Defendants are falsely representing to the public and the trade that Defendants' Goods are authentic products authorized for sale by the Plaintiffs. In reality, Defendants' Goods are worthless counterfeit items that Defendants likely either imported or had manufactured on their behalf.

The Defendants' activities constitute willful and intentional infringement and counterfeiting of the CUBA Mark and Trade Dress in total disregard of Plaintiffs' rights, and have taken place in spite of Defendants' knowledge that Defendants' use of Plaintiffs' CUBA Mark and Trade Dress was and is in direct contravention of Plaintiffs' rights. Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs. Among other things, Defendants have: (1) deprived Plaintiffs of their right to determine the manner in which the CUBA Mark and Trade Dress are presented to the public through merchandising; (2) defrauded the public into thinking that Defendants' Goods are valuable, authorized goods of Plaintiffs; (3) deceived the public as to the origin, sponsorship and/or association of Defendants' Goods; and (4) wrongfully traded and capitalized on Plaintiffs' reputation and goodwill and the commercial value of the CUBA Mark.

## II.   **STATEMENT OF FACTS**

Plaintiff Klink is, and at all times relevant hereto, has been the owner of the following federally registered trademark:

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| CUBA | 2,248,555 | June 1, 1999 |

Emergency *Ex Parte* Application for
Temporary Restraining Order and Seizure Order

which is registered in International Class 3 for use in connection with the manufacture and distribution of the fragrance products. A true and correct copy of the Federal Registration for the CUBA Mark is attached hereto as Exhibit "A." The CUBA Mark is licensed by Klink to PC Design.

Defendants do not have, nor have they ever had, the right or authority to use Plaintiffs' CUBA Mark and Trade Dress for any purpose. See Declaration of Nadim Khouri Klink ("Klink Decl.") at ¶ 9 attached hereto as Exhibit "B." However, despite their known lack of authority to do so, Defendants have been advertising, offering for sale and/or selling fragrance products bearing a counterfeit mark, which is identical to the registered CUBA Mark and bearing a Trade Dress which is identical to the CUBA Trade Dress. See Klink Decl. at ¶¶ 11 – 51; Declarations of Eddy Maaz ("Maaz Decl.") attached hereto as "Exhibit C" and Exhibits "1" through "5," attached thereto with a true and correct Chains of Custody; and Christopher Kirkland ("Kirkland Decl.") attached hereto as Exhibits "D" and Exhibits "1" through "21" attached thereto together with copies of photographs of the counterfeit CUBA fragrance purchased from Defendants. Moreover, given the Defendants' slavish copying of Plaintiffs' mark, label size, color scheme, printing, and design, Plaintiffs' and Defendants' Marks and Trade Dress, and the products sold thereunder, are indistinguishable to consumers at the point of sale.[1] Section 1127 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison of Defendants' Goods with Plaintiffs' registration, courts have found that even marks which are slightly modified from the registered mark copied are to be considered counterfeit marks. See Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp., 770 F. Supp. 754 (P.R. 1991). See also Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Exp. Inc., 601 F. Supp. 1 (S.D. Fla. 1983).

---

[1] In addition to their visual similarity to consumers, Defendants' Counterfeit Goods are substantially different, and likely inferior, in quality.

The Defendants' Goods are all worthless counterfeits that Defendants have likely recently had manufactured on their behalf, imported, or purchased. Defendants' Goods, bearing the counterfeit CUBA Mark, are being promoted, advertised, sold, and offered for sale by Defendants through retail and wholesale businesses in this Judicial District. See Klink Decl. at ¶¶ 11 – 53; Maaz Decl. at ¶¶ 4 – 8; and Kirkland Decl. at ¶¶ 4 – 34. Defendants are making substantial sums of money by preying upon their unsuspecting purchasers who have no knowledge that Defendants are defrauding them through the sale of worthless counterfeit goods. Defendants are falsely representing to consumers and the trade that their counterfeit goods are genuine, authentic, and authorized by Plaintiffs.

At all time relevant hereto, Defendants have been aware of Plaintiffs' (a) ownership of the CUBA Mark; (b) exclusive rights to use and license such CUBA Mark; and (c) substantial goodwill embodied in, and favorable recognition for, the CUBA Mark for fragrances with respect to Defendant N. Tilani Fragrances, Inc., a Seizure Order and Temporary Restraining Order were previously entered in the case styled Nadim Klink, et al. v. M&R Perfumes, Cosmetics & Watches, Inc., et al., Case No. 04-cv-00594 (TPG), United States District Court, Southern District of New York.

These Motions are being filed on an emergency *ex parte* basis to prevent the depletion of Defendants' Goods, which were recently confirmed to be in Defendants' possession by Plaintiffs' investigators, and to allow a ruling hereon before evidence becomes stale. See Maaz Decl. at ¶¶ 4 – 8 and Kirkland Decl. at ¶¶ 4 – 34.

III.    **ARGUMENT**

   A.    **PLAINTIFFS SHOULD BE GRANTED AN *EX PARTE*
         TEMPORARY RESTRAINING ORDER AND ORDER OF
         SEIZURE.**

         1.    **An *Ex Parte* Order is Essential to Prevent
               Immediate Injury.**

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit  . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." This is such a case.

Defendants fraudulently promote, advertise, sell, and/or offer for sale different quality goods bearing a counterfeit of the CUBA Mark. With every passing day, Plaintiffs are suffering greater harm and consumers are being defrauded out of more and more money. If notice is given of Plaintiffs' intent to seek a temporary restraining order, Defendants can easily "unload" or hide the counterfeit goods or means of making them and destroy their records to avoid being caught with Defendants' Goods.   The courts, recognizing the propensity of certain Defendants to dispose of their inventory of counterfeit merchandise and records, have not hesitated to grant *ex parte* temporary restraining orders and orders of seizure.  See Nadim Klink, et al. v. M&R Perfumes, Cosmetics & Watches, Inc., et al., Case No. 04-cv-00594 (TPG), United States District Court, Southern District of New York. See also Reebok Int'l, Ltd. v. Marnatech. Enters., Inc., 970 F.2d. 552 (9th Cir. 1992); Toyota Jidosha Kabushiki Kaisha v. Collision Parts Supply, Inc., 18 U.S.P.Q.2d 1812, 1814-15 (S.D. Fla. 1990); Rolex Watch U.S.A., Inc. v. Canner, 645 F. Supp. 484 (S.D. Fla. 1986); Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp., 770 F. Supp. 754 (P.R. 1991).

As one court noted in directing the entry of a temporary restraining order without notice against a seller of counterfeit goods, "[i]f notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action." In Re Vuitton et Fils S.A., 606 F.2d 1, 5 (2d Cir. 1979). Even service of a temporary restraining order is frequently not effective to freeze the inventory of infringing merchandise and documents related thereto in the hands of counterfeiters. Not only are the Defendants herein engaging in illegal activities, but they also appear to operate sophisticated businesses. Thus, they are probably well aware that trademark counterfeiting is illegal. Accordingly, under the circumstances of this case, it is highly likely that if Defendants were given prior notice of this action, Defendants would destroy, conceal, or transfer their records, their counterfeit goods, and the means for making and selling these items. Therefore, this Court should prevent such an injustice from occurring.

      **2.**      **This Court Has the Authority to Issue An *Ex Parte* Seizure Order Directing the Seizure of Counterfeit and Infringing Goods, the Records Related Thereto, and the Means for Making Such Goods.**

The Trademark Counterfeiting Act of 1984 (the "Anti-Counterfeiting Act"), 15 U.S.C. §1116(d), specifically authorizes this Court to issue *ex parte* orders directing the seizure and impoundment of counterfeit merchandise and the means of making counterfeit merchandise, as well as business records relating thereto. By enacting the Anti-Counterfeiting Act, Congress codified prior judicial practice. As recognized by Congress and the courts, absent such *ex parte* relief, willful counterfeiters could continue to engage in their counterfeiting activity by concealing their counterfeit goods, the means for making such items, and any records documenting the counterfeiter's unlawful business transactions. As set forth by Congress in its Joint Statement on Trademark Counterfeiting Legislation:

> The purpose of the ex parte seizure provision is to provide victims of trademark counterfeiting with the means of ensuring that the

7

> courts are able to exercise their jurisdiction effectively in counterfeiting cases. Testimony before both the House and Senate Judiciary Committees established that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The *ex parte* seizure procedure is intended to thwart this bad faith tactic, while ensuring ample procedural protections for persons against whom such orders are issued.

130 Cong. Rec. H12080 (October 10, 1984).

As amended, 15 U.S.C. §1116(d)(4)(B) provides that, prior to issuing such an order, this Court must find:

    (i)    an order other than an *ex parte* seizure order is not adequate to achieve the purposes of Section 32 of this Act (15 U.S.C. §1114);

    (ii)    the applicant has not publicized the requested seizure;

    (iii)    the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

    (iv)    an immediate and irreparable injury will occur if such seizure is not ordered; granted the mandamus petition of a trademark owner requiring the district court to grant a temporary restraining order without notice to the counterfeiters;

    (v)    the matter to be seized will be located at the place identified in the application;

    (vi)    the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

    (vii)    the person against whom seizure would be ordered, or persons acting in concert with such person, would be likely to destroy, move, hide, or otherwise make such matter inaccessible to the court if the applicant were to proceed on notice to such person.[2]

---

[2] While notice is ordinarily a fundamental element of due process, the United States Supreme Court has recognized that "[t]here may be cases in which [Plaintiff] could make a showing of immediate danger that [Defendants] will

By applying these requirements to the instant case, there is no question that Plaintiffs should be granted the entry of an *ex parte* seizure order.  The evidence provided here reflects the Defendants are organized and sophisticated counterfeiters, who will not likely voluntarily stop their sale of the counterfeit CUBA fragrance product, nor cooperate in any process to stop their sale of the counterfeit CUBA fragrance product.  In fact, the N. Tilani Fragrance Defendant was a party to a prior seizure in this Judicial District involving the sale of counterfeit Cuba fragrance products.  See Klink v. M&R Perfumes, Cosmetics & Watches, Inc., 1:04-cv-00594-TPG, slip op. at 14 (S.D.N.Y. Aug. 12, 2004).

In many counterfeiting cases counterfeiters just rip-off the mark holder.  They make no attempt to hide from the consumer the fact that their products are fakes, yet for a variety of reasons, such as a low price point, the consumer nevertheless purchases the counterfeit goods.  In this case, however, the public is also being cheated.  Defendants are defrauding the public out of thousands of dollars by mixing their counterfeit products with genuine products and then passing off their worthless counterfeit goods as genuine items.  A seizure order should be entered immediately in order to prevent Defendants from continuing to defraud Plaintiffs and the consuming public.

### (a)    An *Ex Parte* Seizure Order is the Only Effective Remedy (15 U.S.C. §1116(d)(4)(B)(i) and (vii)).

The evidence offered by Plaintiffs in support of this application clearly demonstrates that an *ex parte* seizure order is the only effective means of ensuring that additional evidence of Defendants' counterfeiting enterprises will be procured and preserved.  In view of the fact that the Defendants carry on their illegal and fraudulent counterfeiting businesses, it is a virtual

---

destroy or conceal disputed goods." Fuentes v. Shevin, 407 U.S. 67, 93 (1972). Moreover, the strict requirements that applicant must meet prior to obtaining the seizure order protect Defendants' rights.

certainty that Defendants, like so many other counterfeiters, are likely to divest themselves of their inventory of counterfeit goods, relevant business records, and the means for making or obtaining their fake goods absent the issuance of an *ex parte* seizure order. Given that Defendants face the prospect of losing their inventory, having a substantial adverse judgment rendered against them, and being subjected to potential criminal liability, see 18 U.S.C. § 2320; U.S. v. Hon, 904 F.2d 803 (2d Cir. 1990), cert. denied, 498 U.S. 1069 (1991), it would be naive to expect Defendants to voluntarily surrender their counterfeit goods, the means for making or obtaining such goods, and the business records documenting their counterfeiting activities especially the Defendant N. Tilani Fragrances, Inc. who has had all of his counterfeit products seized by the Plaintiffs once before in 2004.[3]

The only effective means of immediately stopping Defendants' massive fraud upon the public is by the entry of an *ex parte* seizure order. Based upon the evidence offered, Plaintiffs submit they have satisfied the requirements of 15 U.S.C. §1116(d)(4)(B), Subsections (i) and (vii).

**(b)  Equitable Considerations Clearly Dictate the Issuance of an *Ex Parte* Seizure Order (15 U.S.C. § 1116(d)(4)(B)(iii).**

Subsection 1116(d)(4)(B)(iii) provides that a plaintiff must demonstrate that it is likely to prove that defendants "used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods and services." As shown in the Declarations of Klink at ¶¶ 11 – 51, Maaz at ¶¶ 4 – 8, and Kirkland at ¶¶ 4 – 34, the Plaintiffs' burden is met in this case. Defendants are

---

[3]  The Anti-Counterfeiting Act underscores these conclusions. By imposing substantial criminal sanctions for the intentional distribution of counterfeit merchandise, 18 U.S.C. § 2320, Congress has effectively increased the likelihood that counterfeiters will attempt to conceal all evidence of their criminal enterprise. A finding that an *ex parte* seizure order is the only effective remedy inevitably follows from the satisfaction of other factors. In fact, it has been held to be an abuse of discretion for a court to deny an application for an *ex parte* seizure order on the ground that orders other than a seizure order would be adequate.

advertising, distributing, selling, and offering for sale Defendants' Goods bearing counterfeits of Plaintiffs' Mark. In doing so, they are defrauding the public and the Plaintiffs, and are also putting consumers' health at risk, since the counterfeit fragrance products being sold by the Defendants are of an unknown chemical makeup.

Further, pursuant to subsection 1116(d)(4)(B)(iv), Plaintiffs must demonstrate that "immediate and irreparable injury will occur" if the *ex parte* seizure order is denied. This factor is shown by the Plaintiffs herein since: (a) the distribution of counterfeit and infringing merchandise has consistently been held to constitute irreparable injury, and (b) Defendants will likely dispose of their counterfeit goods, records, and the means for making or obtaining their counterfeit goods if they receive notice of this action, thereby effectively denying Plaintiffs any meaningful remedy. Furthermore, the public will continue to be defrauded and possibly caused physical harm by Defendants if the Court does not put an immediate halt to Defendants' activities through the entry of an *ex parte* seizure order.

As the Joint Statement on Trademark Counterfeiting Legislation observed with respect to this requirement:

> The fourth required finding, derived from both the Senate and House bills, is that an "immediate and irreparable injury" will occur if a seizure is not ordered. This will not ordinarily be a difficult showing in a counterfeiting case. If the mark in question is likely to be found to be counterfeit, then the applicant will ordinarily be able to show irreparable harm that the goods are likely to be distributed if their seizure is not ordered. The courts have repeatedly held that the distribution of infringing goods constitutes irreparable injury sufficient to order preliminary relief. See for example, In re Vuitton et Fils S.A., 606 F.2d 1, 4 (2d Cir. 1979); Helene Curtis Indus., Inc. v. Church & Dwight Co., 560 F.2d 1325, 1332-33 (7th Cir. 1977), cert. denied, 434 U.S. 1070 (1978); Omega Importing v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971). Since the marks at issue here are not merely infringing but counterfeit marks, this conclusion will be still more easily reached.

130 Cong. Rec. H12081 (October 10, 1984).

Finally, 15 U.S.C. § 1116(d)(4)(B)(vi) requires this Court to find the Plaintiffs' equitable interests are more substantial than those of Defendants.  The Defendants herein are knowingly and intentionally trafficking in counterfeit goods.  See Declarations of Klink, Maaz, and Kirkland, respectively.  Defendants have no legal or equitable right to defraud the public.  Conversely, Plaintiffs' equitable and legal interest in removing unauthorized counterfeit and potentially dangerous merchandise from the marketplace clearly outweighs any interest of the Defendants and mandates the issuance of an *ex parte* seizure order.[4]

Plaintiffs have conclusively shown Defendants are selling counterfeit goods and are profiting from their illicit business.  Absent an order allowing for seizure of these goods, Defendants will suffer no repercussions and will continue to flood the market with counterfeit goods.  Not only will Plaintiffs' reputation be destroyed, but consumers will continue to be bilked out of substantial sums of money.  More importantly, the counterfeit goods being sold by the Defendants are goods of an unknown chemical makeup and are likely to be inhaled and applied to the skin of unsuspecting consumers in reliance upon Plaintiffs' reputation for safe, high quality products.  Thus, the products may represent a health danger to the community if they are not seized.  Equity and public safety thus mandate the issuance of an *ex parte* seizure order in this case.

---

[4] As the Joint Statement on Trademark Counterfeiting Legislation concluded:

> In cases in which the other listed requirements are satisfied, the sponsors do not anticipate that this showing will be a difficult one. The hardship to a plaintiff that is caused by the distribution of goods bearing counterfeit marks will usually be great; a Defendants' legitimate interest in retaining counterfeits, which he or she would hide or destroy if notified of the suit, will normally be minimal. Cf., Atari, Inc. v. North American Philips Consumer Elec. Corp., 672 F.2d 607, 620 (7th Cir. 1982), cert. denied, 103 S. Ct. 176 (1982); Corning Glass Works v. Jeannette Glass Co., 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970), aff'd, 432 F.2d 784 (2d Cir. 1970).

130 Cong. Rec. H12081 (October 10, 1984).

**(c)    Plaintiffs Have Satisfied the Procedure Requirements
Set Forth in Section 1116(d)(4)(B)(ii) and (v).**

Section 1116(d)(4)(B)(ii) requires that prior to issuing an *ex parte* order, this Court must find that Plaintiffs have not publicized the requested seizure. As shown in the Declarations of Maaz at ¶ 9, Kirkland at ¶ 36, and Declaration of Stephen M. Gaffigan at ¶ 3 attached hereto as Exhibit "E," Plaintiffs have met this burden. Plaintiffs have further sought to ensure the seizure order will not be publicized by requesting the records and file in this case be temporarily sealed.

In addition, Plaintiffs have demonstrated that "the matter to be seized will be located at the places identified in the application." 15 U.S.C. § 1116(d)(4)(B)(v). Plaintiffs, through their investigators, have visited and identified Defendants' place of business on multiple occasions, have seen counterfeit goods at Defendants' premises, and recently purchased and inspected samples of the Defendants' fragrance products at those premises. See Declarations of Klink at ¶¶ 11 – 51, Maaz at ¶¶ 4 – 8, and Kirkland at ¶¶ 4 – 34. Those samples bearing the CUBA Mark at issue have been conclusively identified as counterfeits. See Id. Hence, Plaintiffs have demonstrated the goods sought to be seized will be located at the places identified in the Application.

**3.    This Court Has the Authority to Issue an *Ex Parte*
Temporary Restraining Order.**

As previously set forth, under Rule 65 of the Federal Rules of Civil Procedure, a temporary restraining order may be granted without written or oral notice to the opposing party if immediate and irreparable injury will result to the applicant before the adverse party can be heard. As demonstrated above, such irreparable and immediate injury will result to Plaintiffs if Defendants are notified prior to the issuance of a temporary restraining order. The need for a temporary restraining order follows directly from Plaintiffs' need for the *ex parte* seizure. Granting a seizure order without further ordering that Defendants cease and desist from engaging in the counterfeiting conduct would effectively undermine the intent of the seizure order and of the Anti-Counterfeiting Act. While the seizure order may prevent Defendants from immediately resuming the sale of Defendants' Goods, it cannot, by itself, maintain the status quo or prevent

further wrongful activities. <u>See</u> <u>In re Vuitton et Fils, S.A.</u>, 606 F.2d 1, 4 (2d Cir. 1979) ([t]he *ex parte* temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief). <u>See also</u> <u>Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Exp, Inc.</u>, 601 F. Supp. 1, 2 (S.D. Fla. 1983). (granting *ex parte* restraining order to prevent disappearance of counterfeit goods and records).

Based on the evidence and facts presented herein, Plaintiffs have shown good cause why an *ex parte* seizure order should be entered. Accordingly, this Court, pursuant to the Anti-Counterfeiting Act of 1984, the Lanham Act, and New York law should enter the *ex parte* restraining and seizure order sought by Plaintiffs.

### B.    ENTRY OF A PRELIMINARY INJUNCTION IS APPROPRIATE AND NECESSARY.

Under the law of this Circuit, in order to obtain a preliminary injunction, Plaintiffs "must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief." <u>Fed. Express Corp. v. Fed. Espresso, Inc.</u>, 201 F.3d 168, 173 (2d Cir. 2000). As will be demonstrated below, Plaintiffs will have no problem satisfying the <u>FedEx</u> test and, accordingly, demonstrating that preliminary injunctive relief is appropriate and necessary.

### 1.    Probability of Success on the Merits of Plaintiffs' Counterfeiting and Infringement Claims.

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . [by] which such use is likely to cause confusion, or to cause mistake, or to deceive." Accordingly, Plaintiffs must demonstrate (1) they own the CUBA Mark at issue; (2) Defendants' use of the Mark is without authorization from Plaintiffs;

and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. As demonstrated below, Plaintiffs can satisfy each of the three requirements of 15 U.S.C. § 1114, and is therefore likely to prevail on its counterfeiting and infringement claims. Thus, entry of a temporary restraining order and preliminary injunction is proper.

First, the CUBA Mark at issue is owned by Plaintiff Klink and licensed to Plaintiff PC Design, and Defendants do not have his authorization to use the mark on Defendants' Goods. See Klink Decl. at ¶¶ 4, 9. Second, Defendants have used the CUBA Mark in commerce by advertising, offering to sell, and selling their counterfeit goods within this Judicial District. See Declarations of Klink at ¶¶ 11 – 51, Maaz at ¶¶ 4 – 8, and Kirkland at ¶¶ 4 – 34.

The main issue in a trademark infringement action is always whether the activities of the Defendants will result in a likelihood of confusion in the marketplace. "Likelihood of confusion is the basic test for both common law trademark infringement and federal statutory trademark infringement." McCarthy, Thomas J., McCarthy on Trademarks and Unfair Competition, Vol. 3, Sec. 23.01 (rev. ed. 1994). See Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 157, 109 S. Ct. 971, 980 (1989) ("The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source."). In Polaroid Corp. v Polarad Elec. Corp., 287 F.2d 492, 495 (2d Cir. 1961), the Second Circuit set forth the following eight (8) factors to be weighed in a likelihood of confusion analysis in any trademark infringement case. The eight (8) factors are as follows:

     (i)     strength of the mark;

     (ii)    similarity of the marks;

     (iii)   competitive proximity of the goods;

     (iv)   the likelihood that the moving party will bridge the gap and offer a product like the alleged infringer's product

     (v)    actual confusion;

(vi)    good faith on the Defendants' part;

(vii)   quality of the Defendants' products; and

(viii)  the sophistication of buyers.

### (i)    Strength of the Mark

In considering the first factor, the strength of the mark, courts look to (i) inherent strength and (ii) acquired strength. TCPIP Holding Co. v. Haar Commc'n, Inc., 244 F.3d 88, 100 (2d Cir. 2001). Inherent strength is measured by the "mark's degree of inherent distinctiveness" along the spectrum of protectability and strength for trademark. Id. The spectrum of protectability and strength for trademarks is divided into four primary types of designations - (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 2757 (1992). Arbitrary or fanciful marks are the strongest. Moreover, arbitrary/fanciful and suggestive marks are deemed inherently distinctive and entitled to protection. See Id. A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. Rodeo Collection, Ltd. v. W. Seventh, 812 F.2d 1215, 1218 (9th Cir. 1987). Plaintiffs' CUBA Mark is comprised of an inherently distinctive product configuration. The Mark is strong because it is completely arbitrary and fanciful with respect to the fragrance product sold thereunder.

In any event, the CUBA Mark has also acquired secondary meaning. Plaintiffs have expended substantial time, labor, skill, and expense in developing, advertising, and promoting the CUBA Mark. See Klink Decl. at ¶ 6. The CUBA Mark enjoys widespread recognition and is prominent in the minds of the consuming public. Id.

### (ii)    Similarity of the Marks

The Defendants are using a mark which is clearly identical to the CUBA Mark. Compare Exhibits "A" attached hereto with the respective Exhibits attached to the Declarations of Maaz and Kirkland. Thus, this factor weighs entirely in Plaintiffs' favor.

(iii)   **Competitive Proximity of the Goods**

Defendants are selling their counterfeit goods at retail storefronts within this Judicial District.  To the average consumer, Defendants' Goods appear to be substantially similar, if not identical, to Plaintiffs' genuine fragrance product.  This is true in appearance only since Defendants' Goods are non-genuine and inferior in quality.  See Klink Decl. at ¶¶ 11 – 51. Standing alone, this similarity can be held sufficient to establish a likelihood of confusion.  See Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-LeCoultre Watches, Inc., 221 F.2d 464 (2d Cir. 1955).  In view of the foregoing, this factor weighs heavily in favor of Plaintiffs.

(iv)   **Likelihood that the Moving Party will Bridge the Gap and Offer a Product Like the Alleged Infringer's Product**

Analysis of this particular factor is unnecessary, because Plaintiffs already offer goods which are virtually identical to the fragrance product being counterfeited by the Defendants.

(v)   **Evidence of Actual Confusion**

As evidenced by the Declarations of Klink, Maaz, and Kirkland, in addition to the Exhibits hereto, Defendants are offering to sell and selling counterfeit goods which are virtually identical in appearance to those sold by Plaintiffs.  Consumers purchasing Defendants' Goods will likely be actually confused since they are purchasing goods bearing the CUBA Mark under the impression they are purchasing genuine goods authorized by the Plaintiffs.

Post-sale, consumers viewing the counterfeits sold by the Defendants will also be confused.  In a case directly on point, Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc., 221 F.2d 464, 466 (2d Cir. 1955), Judge Frank stated as follows:

> [A]t least some customers would buy [the copier's] cheaper clock for the purpose of acquiring the prestige gained by displaying what many visitors at the customers' homes would regard as a prestigious article. [The copier's] wrong thus consisted of the fact that such a visitor would be likely to assume that the clock was an Atmos clock. . . .  [T]he likelihood of such confusion suffices to render [the copier's] conduct actionable."

The damage to the senior user in such a case is that consumers could acquire the prestige value of the senior user's product by buying the copier's cheap imitation. Even though the knowledgeable buyer knew that he was getting an imitation, viewers would be confused. Thus, the senior user suffers a loss of sales diverted to the junior user, the same as if the actual buyer were confused.

In 1962, Congress struck out language in the Lanham Act which required confusion, mistake or deception of "purchasers as to the source of origin of such goods and services." Several courts have noted this expansion of the test of infringement and held that it supports a finding of infringement when even non-purchasers are deceived, as in the "Atmos" clock case." Accord Ferrari S.p.A. Esercizio Fabbriche Automobili E Corse v. McBurnie, 11 U.S.P.Q.2d 1843 (S.D. Cal. 1989); Ferrari S.p.A. Esercizio Fabbriche Automobili E Corse v. Roberts, 944 F.2d 1235, 1244, 1245 (6th Cir. 1991) ("The Lanham Act, however, was intended to do more than protect consumers at the point of sale . . . . Ferrari's reputation in the field could be damaged by the marketing of [defendant's] replicas . . . despite the absence of point of sale confusion."). See Rolex Watch U.S.A., Inc. v. Canner, 645 F. Supp. 484, 493, 1 U.S.P.Q.2d 1117 (S.D. Fla. 1986) (confusion and mistake can occur among other persons at a future time, such as viewers of the buyer and recipients of a gift of a counterfeit); U.S. v. Hon, 904 F.2d 803, 804-08 (2d Cir. 1990), cert. denied, 498 U.S. 1069 (1991) (The "likely to confuse" standard is not limited to purchasers and potential purchasers, but includes the general public). See also McCarthy, Thomas J., McCarthy on Trademarks and Unfair Competition, Vol. 3, Sec. 23.7 (West 4th Ed. 2001). Hence, this factor also weighs heavily in Plaintiffs' favor.

Defendants have clearly intentionally copied the CUBA Mark and associated Trade Dress for the purpose of deriving the benefit of Plaintiffs' reputation. In the instant matter, Plaintiffs

have produced evidence that Defendants have been trading on the reputation and goodwill of Plaintiffs for the purpose of defrauding the public. In such a case, it is appropriate to infer Defendants intend to benefit from Plaintiffs' reputation to the detriment of Plaintiffs. See Rolex Watch U.S.A., Inc. v. Canner, 645 F. Supp. 484, 492 (S.D. Fla. 1986).

### (vi) **Good Faith on the Defendants' Part**

Exhibits attached hereto make it abundantly clear that the Defendants are not operating in good faith. Rather, the Defendants have slavishly copied the entire package and product configuration design of Plaintiffs' genuine goods and are selling their counterfeit goods at retail storefronts. Moreover, Defendants are clearly marketing their counterfeit goods to the same ultimate customer base as Plaintiffs, through retail outlets - the same marketing channel used by Plaintiffs. Several of the Defendants are purchasers of the Plaintiffs' genuine goods through Plaintiff PC Designs' authorized distributor. Klink Decl. ¶¶ 47-52.

### (vii) **Quality of the Defendants' Product**

The Defendants' counterfeit goods contain a liquid chemical compound of an unknown makeup and the goods do not pass through Plaintiffs' quality control process. Accordingly, the goods may represent a health danger to members of the consuming public whom are likely to inhale Defendants' counterfeit fragrances and apply the same to their skin. Because Defendants' counterfeit goods have an associated public health risk, they are clearly different than Plaintiffs' genuine CUBA fragrance products, which are of a known, safe, and approved chemical makeup.

### (viii) **Sophistication of Buyers**

For consumers purchasing the goods at issue, the most important fact is generally price. The greater the price of a product, the more careful the typical potential purchaser is expected to be, thereby reducing the likelihood of confusion. See McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1137 (2d Cir. 1979), *overruled on other grounds by* Bristol-Myers Squibb v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1043-44 (2d Cir. 1992) ("the average purchaser of an

automobile will no doubt devote more attention to examining different products and determining their manufacturer or source than will the average purchaser of a ball of twine.") While the respective goods sold by Plaintiffs and the Defendants are not exactly balls of twine, they are very inexpensive fragrance products which consumers likely do not spend a great deal of time selecting. The average price of a bottle of CUBA brand fragrance is $9.00 at retail. See Klink Decl. at ¶ 6. In any event, even a detailed analysis of Defendants' counterfeit products by a consumer would not reveal that they are distinguishable from Plaintiffs' genuine goods, because the trademark being used by the Defendants is identical to the CUBA Mark. This factor also weighs completely in favor of Plaintiffs.

In view of the foregoing, Plaintiffs have established the required likelihood of success on the merits of their trademark counterfeiting, infringement, and false designation of origin claims against Defendants.

### 2.     Possibility of Irreparable Injury

Irreparable injury may be presumed as a matter of law where a likelihood of confusion or possible risk to reputation is found to exist. See also Power Test Petrol. Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985) (Plaintiff proves irreparable injury if it "shows that it will lose control over the reputation of its trademark pending trial." Preliminary injunction affirmed); Black Hills Jewelry Mfg. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980) ("A finding of tendency to deceive satisfies the requisite of irreparable harm"). "Once the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue." Rodeo Collection, Ltd. v. W. Seventh, 812 F.2d 1215, 1220 (9th Cir. 1987).

As demonstrated above, a likelihood of confusion exists herein, because Defendants are engaged in continuous counterfeiting activities using spurious designations, which are substantially indistinguishable from Plaintiffs' actual CUBA Mark. Thus, Plaintiffs will continue to suffer irreparable injury to their reputation and goodwill for as long as Defendants

are allowed to continue their counterfeiting activities. <u>See</u> Klink Decl. at ¶ 8. Moreover, Defendants' Goods are of a substantially different quality to the genuine goods of Plaintiffs. <u>See</u> Klink Decl. at ¶¶ 11 – 51. As the Second Circuit noted, "[r]eputation is not calculable nor precisely compensable." <u>Power Test Petrol. Distribs., Inc. v. Calcu Gas, Inc.</u>, 754 F.2d at 95. Thus, an award of money damages alone will not cure the injury to Plaintiffs' reputation as a result of Defendants' infringing actions.

More importantly, the counterfeit goods being sold by the Defendants are goods of an unknown chemical makeup and are likely to be inhaled and applied to the skin of unsuspecting consumers in reliance upon Plaintiffs' reputation for safe, high quality products. The products may represent a health danger to the community if they are not seized and create massive potential personal injury liability for Plaintiffs.

### 3.    <u>The Balance of Hardships Tips Sharply in Plaintiffs' Favor</u>

The Plaintiffs have expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the CUBA Mark and the goods associated with such Mark. <u>See</u> Klink Decl. at ¶¶ 6 – 7. Plaintiffs have already suffered unquantifiable damage to their reputation as manufacturers of a quality, safe fragrance product. Should Defendants be permitted to continue their trade in counterfeit goods, Plaintiffs will continue to suffer substantial losses and damage to their reputation. To the contrary, Defendants will suffer no legitimate hardship in the event a preliminary injunction is issued. Defendants have no legal or equitable right to engage in their present counterfeiting activities. Hence, the issuance of an injunction will only serve to prevent Defendants from engaging in illegal activities.

### 4.    <u>The Relief Sought Serves the Public Interest</u>

The issuance of a preliminary injunction is in the best interest of the general public. Defendants are engaged in criminal activities and are directly defrauding the consuming public by palming off Defendants' Goods as genuine goods of Plaintiffs. The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. <u>Nike, Inc. v.</u>

Leslie, 227 U.S.P.Q. 574, 575 (M.D. Fla. 1985). The public also has a right to be protected from the distribution of potentially harmful chemical products under well known and trusted trademarks.

### 5.    Bond Amount

Plaintiffs request this Court set a total bond in the amount of ten thousand dollars ($10,000.00) in connection with the issuance of the seizure order in this matter. The counterfeit goods in question are inexpensive, selling at retail for approximately $2.50 to $7.00 each depending on the size. The actual cost of Defendants' goods to be seized is therefore likely no more than $1.00 or $2.00 per unit. Accordingly, a ten thousand dollars ($10,000.00) bond will more than adequately protect the Defendants' interests.

### 6.    Notice to United States Attorney.

Plaintiffs have given notice of its application for an *ex parte* seizure order to the United States Attorney for this Judicial District pursuant to 15 U.S.C. § 1116(d)(2). See Gaffigan Decl. at ¶ 2.

### C.    STEPHEN M. GAFFIGAN, P.A. AND GIBNEY, ANTHONY & FLAHERTY, LLP SHOULD BE APPOINTED AS SUBSTITUTE CUSTODIANS FOR THE SEIZED GOODS AND DOCUMENTS.

It is appropriate to appoint a substitute custodian with whom the seized goods and business records may be deposited in place of Defendants. See Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 737 F. Supp. 1521, 1525 (S.D. Cal. 1989) (seized goods impounded in the custody of Plaintiffs' agents as substitute custodian held proper). Accordingly, Plaintiffs' counsels, Stephen M. Gaffigan, P.A. and Gibney, Anthony & Flaherty, LLP, respectfully request this Court order all goods and records seized to be turned over to their custody for preservation throughout the trial of this matter. It is further requested that this Court limit access to Defendants' seized goods and records to Plaintiffs, Plaintiffs' counsels, and Defendants and their counsel.

**D.    THE PLAINTIFF SHOULD BE ALLOWED TO
       ENGAGE IN EXPEDITED DISCOVERY.**

Pursuant to 15 U.S.C. §1116(d)(10)(A), this Court must hold a hearing to review the requested seizure between ten (10) and fifteen (15) days after the seizure order is issued.  In connection with that hearing, Subsection 1116(d)(10)(B) provides that this Court "may make such orders modifying the time limits for discovery under the Rules of Civil Procedure as may be necessary to prevent the frustration of the purposes of such hearing."  In the instant case, accelerated discovery will benefit the parties by insuring a fully developed record is before this Court at the required hearing.  Specifically, Plaintiffs request this Court allow Plaintiffs to immediately depose the Defendants and to immediately propound requests for production of documents and interrogatories with a command that responses be served within three (3) days.  Such an accelerated discovery schedule will not prejudice the Defendants and will serve the interests of justice.  Absence of preliminary discovery will prejudice Plaintiffs by denying them the additional documents and information necessary to fully develop their case at the required hearing.  In such a case, an order of expedited discovery is appropriate.  See Fimab-Finanziaria Maglificio Biellese Fratelli Fila, S.p.A. v. Kitchen, 548 F. Supp. 248, 250 (S.D. Fla. 1982).

**E.    THE COURT FILE SHOULD BE TEMPORARILY SEALED**

The element of surprise is of utmost importance if an action for temporary restraining order and seizure is to be effective.  Sealing of the court file in a case such as this is expressly provided for in the Anti-Counterfeiting Act.  15 U.S.C. §1116(d)(8).  Sealing of a court file protects the identity of the parties and the nature of relief sought, and prevents the criminal counterfeiter from being appraised of the impending seizure.

IV.     **CONCLUSION**

In view of the foregoing, Plaintiffs respectfully request that their application herein be granted.

DATED this *2ND* day of May, 2008.

Respectfully submitted,

GIBNEY ANTHONY & FLAHERTY, LLP

By:

John Macaluso
665 Fifth Avenue
New York, New York 10022-5305
Telephone: (212) 688-5151
Facsimile: (212) 688-8315
E-mail: jmacaluso@gibney.com
Counsel for Plaintiffs

OF COUNSEL:
Stephen M. Gaffigan
Stephen M. Gaffigan, P.A.
312 S.E. 17th Street
Second Floor
Ft. Lauderdale, Florida 33316
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
Email:  Stephen@smgpa.net

Emergency *Ex Parte* Application for
Temporary Restraining Order and Seizure Order

**Int. Cl.: 3**

**Prior U.S. Cls.: 1, 4, 6, 50, 51 and 52**

**Reg. No. 2,248,555**

## United States Patent and Trademark Office

**Registered June 1, 1999**

### TRADEMARK
### PRINCIPAL REGISTER



KHOURI KLINK, NADIM (FRANCE CITIZEN)
24, AVENUE CLEMENCE
92700 COLOMBES, FRANCE

FOR: PERFUMES, ESSENTIAL OILS FOR PERSONAL USE, HAIR LOTIONS AND COSMETICS, NAMELY, FOUNDATION MAKEUP, ROUGE, LIPSTICK, BLUSHER, EYE SHADOW, MAKEUP REMOVER, EYEBROW PENCIL, EYE LINER, MASCARA, LIP LINER AND CONCEALER, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

PRIORITY CLAIMED UNDER SEC. 44(D) ON FRANCE APPLICATION NO. 96/649492, FILED 11–6–1996, REG. NO. 96/649492, DATED 11–6–1996, EXPIRES 11–6–2006.

THE MARK IS INTENDED TO BE LINED FOR THE COLORS RED AND BROWN AND THE MARK CONSISTS OF A DESIGN OF A CIGAR.

THE MARK CONSISTS OF A CONFIGURATION OF THE GOODS WHICH IS A CIGAR SHAPED CONTAINER.

SER. NO. 75–242,232, FILED 2–14–1997.

LINDA MICKLEBURGH, EXAMINING ATTORNEY