THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NADIM KHOURI KLINK, an individual, and PC DESIGN SARL, a foreign business entity,<br><br>Plaintiff,<br><br>vs.<br><br>M&H PERFUMES, INC., A New York corporation, d/b/a M & H PERFUMES d/b/a SHALIMAR PERFUMES, INC.; **N. TILANI FRAGRANCES, INC.**, a New York Corporation, d/b/a N. TILANI FRAGRANCE; **AKB PERFUME, INC.**, a New York corporation, d/b/a AKB PERFUME d/b/a TOP QUALITY PRODUCTS; **TOP QUALITY PRODUCTS, INC.**, a New York corporation, d/b/a TOP QUALITY PRODUCTS d/b/a AKB PERFUME; **METRO PERFUME, INC.**, a New York Corporation, d/b/a METRO PERFUME; **ORKAY ENTERPRISES, INC.**, a New York corporation, d/b/a ORKAY ENTERPRISES; **G.N. PERFUMES, INC.**, a New York corporation d/b/a G.N. PERFUMES; **TK PERFUMES, INC.**, a New York corporation, d/b/a TK PERFUMES and DOES 1-10,<br><br>Defendants. | CASE NO.<br><br>Filed Under Seal<br><br>08 CV 4243 |

**DECLARATION OF NADIM KHOURI KLINK IN SUPPORT OF PLAINTIFFS' EMERGENCY *EX PARTE* APPLICATION FOR: (A) TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER; (B) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; (C) SUBSTITUTE CUSTODIAN ORDER; (D) EXPEDITED DISCOVERY; AND (E) AN ORDER TEMPORARILY SEALING THE COURT FILE**



1. My name is Nadim Khouri Klink, and I am an owner of PC Design Sarl ("PC Design"), the manufacturer and first line distributor of CUBA fragrance products throughout the world.

2. I am over 18 years of age and have personal knowledge of the facts set forth herein.

3. In my capacity as PC Design's representative, I am fully familiar with most aspects of the manufacture, sale, and distribution of genuine CUBA fragrance products. PC Design manufactures and distributes a substantial number of CUBA fragrance products throughout the world, including within this Judicial District,

4. I am the owner of all rights in and to the following federally registered trademark:

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| CUBA | 2,248,555 | June 1, 1999 |

which is registered in International Class 3 (the "Cuba Mark") and which is used in connection with the manufacture and distribution of, among other things, CUBA fragrance products. A true and correct copy of the Federal Registration for the CUBA Mark is attached as Exhibit "A" to Plaintiff's Emergency, *Ex Parte* Application for (A) Temporary Restraining Order and Seizure Order; (B) Preliminary Injunction; (C) Substitute Custodian Order; (D) Expedited Discovery; and (E) an Order Temporarily Sealing the Court File.

5. Since the 1990s, PC Design has been engaged in the promotion, distribution, and sale in interstate commerce of high quality fragrance products and other items under the CUBA Mark and associated trade dress (the "Cuba Trade Dress").

6. Genuine CUBA fragrance products are sold throughout the United States via PC Designs' authorized distributor, BB Trading Worldwide, Inc. During the more than 8 years that

PC Design has sold goods in interstate commerce under the Cuba Mark, PC Design has spent substantial amounts of money to extensively advertise and promote its goods and the Cuba Mark and Trade Dress. The CUBA fragrance products are sell for an average retail price of $9.00 per bottle. In recent years, CUBA fragrance products have reached a very high volume in yearly net sales.

7. As a result of the foregoing, CUBA fragrance products and its associated trademark and trade dress have acquired widespread recognition in the consumer market for fragrances in the United States. No other manufacturer uses the Cuba Mark and Trade Dress or any substantially similar mark or trade dress for the same type of fragrance products. The Cuba Mark and Trade Dress have never been abandoned.

8. The Cuba Mark and Trade Dress are vital to the businesses of PC Design and myself. The CUBA Mark represents virtually the entire value of the company's fragrance business and its associated image. Thus, PC Design and I suffer irreparable harm to our goodwill, as well as a direct monetary loss, any time any third parties, including the Defendants, M&H Perfumes, Inc., a New York corporation, d/b/a M&H Perfumes d/b/a Shalimar Perfumes, Inc. ("M&H Perfume"); N. Tilani Fragrances Inc., a New York corporation d/b/a N. Tilani Fragrances ("N. Tilani Fragrance"); AKB Perfume, Inc., a New York Corporation, d/b/a AKB Perfume d/b/a Top Quality Products ("AKB Perfume"), and Top Quality Products Inc., a New York corporation, d/b/a Top Quality Products d/b/a AKB Perfume, (collectively the "AKB/Top Quality Defendants"); Metro Perfume, Inc., a New York corporation, d/b/a Metro Perfume ("Metro Perfume"); Orkay Enterprises, Inc., a New York corporation, d/b/a Orkay Enterprises ("Orkay Enterprise Defendants"); G.N. Perfumes, Inc., a New York corporation d/b/a G.N. Perfumes ("G.N. Perfume"); and TK Perfumes, Inc., a New York corporation, d/b/a TK

Perfumes ("TK Perfume") (collectively the "Defendants") sell counterfeit goods bearing identical or substantially similar trademarks or trade dress.

9. Recently, I learned the Defendants were selling fragrance products under the Cuba Mark and Trade Dress without either my authorization or authorization from PC Design. However, the Cuba Mark and Trade Dress have never been assigned or licensed to the Defendants, and the Defendants do not have, nor have they ever had, the right or authority to use the Cuba Mark or Trade Dress for any purpose.

10. In December, 2007, as part of my ongoing investigations regarding counterfeit fragrance products, private investigator Christopher Kirkland of CK Investigations, Inc., a licensed New York private investigative firm, located in New York, New York, was retained to investigate the Defendants.

11. On December 11, 2007, Kirkland and Eddy Maaz, an employee of PC Design, traveled to the business location of M&H Perfume. Eddy Maaz purchased a large bottle of cologne bearing the Cuba Mark at issue in this proceeding for $5.00. A true and correct photograph of the Cuba branded fragrance product purchased by Eddy Maaz from M&H Perfume is attached to the Declaration of Eddy Maaz as Exhibit "1."

12. The Cuba branded fragrance product purchased by Eddy Maaz from M&H Perfume was delivered to Plaintiffs' counsel for my analysis. My analysis of the large bottle of the Cuba branded fragrance product revealed the following findings:

    a. The placement of the Cuba label is different on the counterfeit product purchased from the M&H Perfume Defendants than on an authentic Cuba branded fragrance product;

    b.    The color of the label on the counterfeit product purchased from the M&H Perfume Defendants is different than on an authentic Cuba branded fragrance product;

    c.    The lettering used on the counterfeit product purchased from the M&H Perfume Defendants is different than on an authentic Cuba branded fragrance product;

    d.    The placement of lettering on the counterfeit product purchased from the M&H Perfume Defendants is different than on an authentic Cuba branded fragrance product; and

    e.    The stopper used to seal to the counterfeit Cuba branded fragrance product purchased from the M&H Perfume Defendants is different than on an authentic Cuba branded fragrance product.

13.    Based on my analysis, I determined the Cuba branded fragrance product purchased from M&H Perfume by Eddy Maaz is a non-genuine counterfeit product.

14.    On December 11, 2007, Kirkland and Maaz also traveled to the business location of Orkay Enterprise. Maaz purchased one large bottle of the CUBA fragrance product for a total purchase price of $5.00. A true and correct photograph of the Cuba branded fragrance product purchased by Eddy Maaz from Orkay Enterprise is attached to the Declaration of Eddy Maaz as Exhibit "2."

15.    The Cuba branded fragrance product purchased by Maaz from Orkay Enterprise was delivered to Plaintiffs' counsel for my analysis. Through my analysis I determined the Cuba branded fragrance product purchased from Orkay Enterprise has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the purchase from

the M&H Perfume Defendants. See detailed analysis of counterfeit Cuba branded product outlined in Paragraph 12 above.

16. Based on my analysis, I determined the Cuba branded fragrance product purchased from Orkay Enterprise by Maaz is a non-genuine counterfeit Cuba branded fragrance product.

17. On December 11, 2007, Maaz also traveled to the business location of TK Perfume. Maaz purchased two small bottles of the Cuba branded fragrance product for $5.00. A true and correct photograph of the Cuba branded fragrance product purchased by Maaz from TK Perfume is attached to the Declaration of Maaz as Exhibit "4."

18. The Cuba branded fragrance products purchased by Maaz from TK Perfume were delivered to Plaintiffs' counsel for my analysis. My analysis of the small bottles of the Cuba branded fragrance products revealed the following findings:

   a. The lettering used on the counterfeit product purchased from the TK Perfume Defendants is different than on an authentic Cuba branded fragrance product;

   b. The stopper used to seal to the counterfeit Cuba branded fragrance product purchased from the M&H Perfume Defendants is different than on an authentic Cuba branded fragrance product.

   c. The label used on the counterfeit product purchased from the TK Perfume Defendants is different in color from an authentic Cuba branded fragrance product; and

   d. The material used on the counterfeit product purchased from the TK Perfume Defendants is different in texture from an authentic Cuba branded fragrance product.

19. Based on my analysis, I determined the large Cuba branded fragrance product purchased from TK Perfume by Maaz is a non-genuine counterfeit Cuba branded fragrance product. I determined the small case packed Cuba branded products to be genuine.

20. On December 16, 2007, Maaz traveled to the business location of G.N. Perfume. Maaz purchased one small bottle and one large bottle of the Cuba fragrance product for a total price of $7.50. A true and correct photograph of the Cuba branded fragrance products purchased by Maaz from G.N. Perfume is attached to the Declaration of Maaz as Exhibit "5."

21. The Cuba branded fragrance product purchased by Maaz from G.N. Perfume was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the small bottle of the Cuba branded fragrance product purchased from G.N. Perfume has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the purchase from the TK Perfume Defendants. See detailed analysis of counterfeit Cuba branded product outlined in Paragraph 18 above. Through my analysis, I also determined the large bottle of the Cuba branded fragrance product purchased from G.N. Perfume has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the purchase from the M&H Perfume Defendants. See detailed analysis of counterfeit Cuba branded product outlined in Paragraph 12 above.

22. Based on my analysis, I determined the Cuba branded fragrance products purchased from G.N. Perfume by Maaz is a non-genuine counterfeit Cuba branded fragrance product.

23. On February 9, 2008, Kirkland again traveled to the business location of M&H Perfume. Kirkland purchased one large bottle of Cuba branded fragrance product for $6.00 from

M&H Perfume. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from M&H Perfume is attached to the Declaration of Kirkland as Exhibit "3."

24. The Cuba branded fragrance product purchased by Kirkland from M&H Perfume was delivered to Plaintiffs' counsel for my analysis. Through my analysis I determined the Cuba branded fragrance product purchased from M&H Perfume has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the initial purchase from the M&H Perfume Defendants. See detailed analysis of counterfeit Cuba branded product outlined in Paragraph 12 above.

25. Based on my analysis, I determined the second Cuba branded fragrance product purchased from M&H Perfume by Kirkland is a non-genuine counterfeit Cuba branded fragrance product.

26. On February 9, 2008, Kirkland traveled to the business location of the Metro Perfume Defendants. Kirkland purchased one large bottle of Cuba branded fragrance product for $5.00 from Metro Perfume. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from Metro Perfume is attached to the Declaration of Kirkland. as Composite Exhibit "5."

27. The Cuba branded fragrance product purchased by Kirkland from Metro Perfume was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the Cuba branded fragrance product purchased from Metro Perfume has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the purchase from the M&H Perfume Defendants. See detailed analysis of counterfeit Cuba branded product outlined in Paragraph 12 above.

28. Based on my analysis, I determined the Cuba branded fragrance product purchased from Metro Perfume by Kirkland is a non-genuine counterfeit Cuba branded fragrance product.

29. On February 16, 2008, Kirkland traveled to the business location of N. Tilani Fragrance. Kirkland purchased one large bottle of Cuba branded fragrance product for $5.00 from N. Tilani Fragrance. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from N. Tilani Fragrance is attached to the Declaration of Kirkland as Composite Exhibit "7."

30. The Cuba branded fragrance product purchased by Kirkland from N. Tilani Fragrance was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the Cuba branded fragrance product purchased from N. Tilani Fragrance has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the purchase from the M&H Perfume Defendants. See detailed analysis of counterfeit Cuba branded product outlined in Paragraph 12 above.

31. Based on my analysis, I concluded the Cuba branded fragrance product purchased from N. Tilani Fragrance by Kirkland is a non-genuine counterfeit Cuba branded fragrance product.

32. On February 16, 2008, Kirkland traveled to the business location of the AKB/Top Quality Defendants. Kirkland purchased one large bottle of Cuba branded fragrance product for $6.00 from the AKB/Top Quality Defendants. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from the AKB/Top Quality Defendants is attached to the Declaration of Kirkland as Composite Exhibit "9."

33. The Cuba branded fragrance product purchased by Kirkland from the AKB/Top Quality Defendants was delivered to Plaintiffs' counsel for my analysis. Through my analysis I determined the Cuba branded fragrance product purchased from the AKB/Top Quality Defendants has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the purchase from the M&H Perfume Defendants. See detailed analysis of counterfeit Cuba branded product outlined in Paragraph 12 above.

34. Based on my analysis, I concluded the Cuba branded fragrance product purchased from the AKB/Top Quality Defendants by Kirkland is a non-genuine counterfeit Cuba branded fragrance product.

35. On March 27, 2008, Kirkland again traveled to the business location of M&H Perfume. Kirkland purchased one small bottle of Cuba branded fragrance product for $2.50 from M&H Perfume. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from M&H Perfume is attached to the Declaration of Kirkland as Composite Exhibit "11."

36. The Cuba branded fragrance product purchased by Kirkland from M&H Perfume was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the Cuba branded fragrance product purchased from M&H Perfume has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the purchase from the TK Perfume Defendants. See detailed analysis of counterfeit Cuba branded product outlined in Paragraph 18 above.

37. Based on my analysis, I determined the Cuba branded fragrance product purchased from M&H Perfume by Kirkland is a non-genuine counterfeit Cuba branded fragrance product.

38. On March 27, 2008, Kirkland traveled to the business location of Metro Perfume. Kirkland purchased one small bottle of Cuba branded fragrance product for $3.00 from Metro Perfume. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from Metro Perfume is attached to the Declaration of Kirkland as Composite Exhibit "14."

39. The Cuba branded fragrance product purchased by Kirkland from Metro Perfume was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the Cuba branded fragrance product purchased from Metro Perfume has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the purchase from the TK Perfume Defendants. See detailed analysis of counterfeit Cuba branded product outlined in Paragraph 18 above.

40. Based on my analysis, I determined the Cuba branded fragrance product purchased from Metro Perfume by Kirkland is a non-genuine counterfeit Cuba branded fragrance product.

41. On March 27, 2008, Kirkland traveled to the business location of the AKB/Top Quality Defendants. Kirkland purchased one small bottle of Cuba branded fragrance product for $3.00 from the AKB/Top Quality Defendants. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from the AKB/Top Quality Defendants is attached to the Declaration of Kirkland as Composite Exhibit "16."

42. The Cuba branded fragrance product purchased by Kirkland from the AKB/Top Quality Defendants was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the Cuba branded fragrance product purchased from the AKB/Top Quality Defendants has the exact same differences to a genuine Cuba fragrance product as those outlined

above in connection with the purchase from the TK Perfume Defendants. <u>See</u> detailed analysis of counterfeit Cuba branded product outlined in Paragraph 18 above.

43. Based on my analysis, I determined the Cuba branded fragrance product purchased from the AKB/Top Quality Defendants by Kirkland may be a non-genuine counterfeit Cuba branded fragrance product.

44. On March 27, 2008, Kirkland traveled to the business location of G.N. Perfume. Kirkland purchased one small bottle of Cuba branded fragrance product for $2.50 from G.N. Perfume. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from G.N. Perfume is attached to the Declaration of Kirkland as Composite Exhibit "19."

45. The Cuba branded fragrance product purchased by Kirkland from G.N. Perfume was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the Cuba branded fragrance product purchased from G.N. Perfume has the exact same differences to a genuine Cuba fragrance product as those outlined above in connection with the purchase from the TK Perfume Defendants. <u>See</u> detailed analysis of counterfeit Cuba branded product outlined in Paragraph 18 above.

46. Based on my analysis, I determined the Cuba branded fragrance product purchased from G.N. Perfume by Kirkland is a non-genuine counterfeit Cuba branded fragrance product.

47. On March 27, 2008, Kirkland traveled to the business location of TK Perfume. Kirkland purchased one small bottle of Cuba branded fragrance product for $3.00 from TK Perfume. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from TK Perfume is attached to the Declaration of Kirkland as Composite Exhibit "21."

48. The Cuba branded fragrance product purchased by Kirkland from TK Perfume was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the Cuba branded fragrance product purchased from TK Perfume may be genuine. This means, TK Perfume is likely mixing counterfeit and genuine goods in order to evade detection. See Paragraph 19 above outlining the analysis of counterfeit Cuba branded fragrance product purchased from TK Perfume on December 11, 2007.

49. On March 27, 2008, Kirkland traveled to the business location of Orkay Enterprises. Kirkland purchased one small bottle of Cuba branded fragrance product for $3.00 from TK Perfume. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from Orkay Enterprises is attached to the Declaration of Kirkland as Composite Exhibit "22."

50. The Cuba branded fragrance product purchased by Kirkland from Orkay Enterprises was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the Cuba branded fragrance product purchased from Orkay Enterprises may be genuine. This means, Orkay Enterprises is likely mixing counterfeit and genuine goods in order to evade detection. See Paragraph 16 above outlining the analysis of counterfeit Cuba branded fragrance product purchased from Orkay Enterprises on December 11, 2007.

51. On March 27, 2008, Kirkland traveled to the business location of N. Tilani Fragrances. Kirkland purchased one small bottle of Cuba branded fragrance product for $3.00 from N. Tilani Fragrances. A true and correct photograph of the Cuba branded fragrance product purchased by Kirkland from N. Tilani Fragrances is attached to the Declaration of Kirkland as Composite Exhibit "23."

52. The Cuba branded fragrance product purchased by Kirkland from N. Tilani Fragrances was delivered to Plaintiffs' counsel for my analysis. Through my analysis, I determined the Cuba branded fragrance product purchased from N. Tilani Fragrances may be genuine. This means, N. Tilani Fragrances is likely mixing counterfeit and genuine goods in order to evade detection. <u>See</u> Paragraph 31 above outlining the analysis of counterfeit Cuba branded fragrance product purchased from N. Tilani Fragrances on February 16, 2008.

53. Based on my analysis outlined above, I can confirm that all of the Defendants identified herein are engaged in the sale of non-genuine counterfeit Cuba branded fragrance products.

54. In view of the foregoing, PC Design and I can confirm the fragrance products sold by the Defendants to our private investigators, under the CUBA Mark, are non-genuine counterfeit products and are of a different quality than genuine CUBA fragrance products.

55. Several of the Defendants named herein are regular customers of PC Designs, and purchasers of genuine CUBA fragrance products.

56. Genuine CUBA fragrance products pass through a rigorous quality control process before being approved by PC Designs' inspection department for sale to consumers.

57. Neither PC Design's investigation of the Defendants, nor the fact that PC Design is seeking a temporary restraining order and seizure order has been made public by myself nor any employee or representative of PC Design.

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

   FURTHER DECLARANT SAYETH NAUGHT.

Dated this __30__ day of April, 2008.

                _____
                 Nadim Khouri Klink